FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 15, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULIE H., | No. 1:16-cv-03227-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 16. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 19.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income benefits on February 12, 2013, alleging a disability onset date of November 26, 2012.  Tr. 20, 215-22.  Benefits were denied initially, Tr. 115-22, and upon reconsideration.  Tr. 127-36.  Plaintiff appeared for hearings before an administrative law judge (ALJ) on April 10, 2015 and June 16, 2015.  Tr. 33-68. On July 16, 2015, the ALJ denied Plaintiff's applications.  Tr. 17-32.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 26, 2012.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: fibromyalgia, obesity, and knee and

shoulder pain.  Tr. 22.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform a light work except:

> She can stand and walk for about 4 of 8 hours, sit without limitations, can do no climbing of ladders, ropes or scaffolds, can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, is limited to not more than occasional overhead work, and should avoid extreme cold and strong vibration.

Tr. 23.  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as office helper, electronics worker, and small products assembler.  Tr. 27-28.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since November 26, 2012 through the date of the decision.  Tr. 28.

On October 26, 2016, the Appeals Council denied review, Tr. 2-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly identified all of Plaintiff's severe impairments at step two;

2. Whether the ALJ properly weighed Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence;

4. Whether the ALJ properly weighed the lay witness testimony;

5. Whether the ALJ properly determined the RFC; and

6. Whether the ALJ properly considered the Medical Vocational Guidelines (the "grids") at step five.

*See* ECF No. 15 at 2.

## DISCUSSION

### A. Step Two

Plaintiff contends the ALJ erred by failing to find any severe psychological impairments at step two.  Specifically, Plaintiff contends that her testimony in conjunction with the assessments of Pamela Miller, Ph.D. (diagnosing an adjustment disorder with anxiety) and Troy Witherrite, M.D. (diagnosing pain syndrome and anxiety state NOS), establish harmful error at step two where associated limitations were not included in the RFC.  ECF No. 15 at 12; ECF No. 20 at 6-7.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 416.908 (2010).[1]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding

---

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised. The Court applies the version that was in effect at the time of the ALJ's decision.

appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a) (2010);[2] SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ concluded that Plaintiff had no severe mental impairments. Tr. 22. Specifically, the ALJ found that the medically determinable mental impairments of anxiety and marijuana abuse, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Tr. 22; *see also* Tr. 26 (finding that the

_____

[2] As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. The Court applies the version that was in effect at the time of the ALJ's decision.

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

evidence did not "support mental limitations"). In concluding Plaintiff's mental impairments were non-severe, the ALJ gave the assessments of examining psychologist Pamela Miller, Ph.D. and state agency consultants significant weight. Tr. 26.

Plaintiff contends the evidence satisfying her burden of proving a severe mental impairment includes her testimony that she had lots of pain, ECF No. 20 at 6, Dr. Miller's findings that Plaintiff had an "impaired affect" and an inability to perform serials sevens, and Dr. Witherrite's treatment notes documenting anxiety and tearfulness. ECF No. 15 at 12. A diagnosis alone does not establish the existence of a severe impairment and Plaintiff fails to identify how her mental health impairments had a more than slight functional impact. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); 20 C.F.R. §§ 404.1521, 416.921 (2010). The inability to perform serial sevens and the fact Plaintiff was "teary" at times, Tr. 329-30, 346, do not indicate more than a slight mental impairment. *See, e.g.*, *Back v. Colvin*, 653 Fed. Appx. 550, 553 (9th Cir. June 29, 2016) (upholding ALJ's conclusion that claimant had "psychological capacity sufficient to complete an average work week" despite "trouble counting backwards from 100 by 7s").

Although it is her contention that her pain demonstrates she "has functional limitations as a result of her pain disorder," Plaintiff does not identify these limitations. ECF No. 20 at 7. Moreover, the ALJ evaluated Plaintiff's complaints

of pain in connection with Plaintiff's physical impairments. Tr. 22-27. The ALJ's RFC assessment specifically included restrictions due to pain symptoms, limiting Plaintiff to a modified range of light work and including postural limitations. Tr. 23.

Thus, even if the failure to list an impairment as severe was error, the error would be harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to identify any limitation associated with any mental impairment that was not considered by the ALJ and incorporated into the RFC at step four. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The ALJ accorded significant weight to the psychological evaluation of Dr. Miller and great weight to the mental assessments of the state agency consultants, findings which Plaintiff does not challenge. *Id.* The ALJ's step two finding is legally sufficient.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinion evidence of Troy Witherrite, M.D. and Derek Leinenbach, M.D.[4] ECF No. 15 at 10-13.

---

[4] Plaintiff's sole challenge related to the opinion of Dr. Miller is addressed in the discussion of step two. Plaintiff fails to identify opinions as to functional limitations assessed by rheumatologist Daniel Sager, M.D that were not

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

_____

considered by the ALJ. Plaintiff's contention regarding the ALJ's consideration of the treatment notes of Dr. Sager is further discussed in the analysis of the ALJ's evaluation of Plaintiff's symptom claims.

by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

*1. Troy Witherrite, M.D.*

Dr. Witherrite began treating Plaintiff in January 2013. Tr. 301-05. Dr. Witherrite provided opinions on Plaintiff's ability to work, in January 2013, July 2013, and November 2014. Tr. 301-05, 321, 368, 404-06.

a. January 9, 2013 Opinion

In January 2013, Dr. Witherrite opined in a physical functional evaluation that Plaintiff was restricted to sedentary work due to bilateral impingement shoulder syndrome, hip and knee osteoarthritis, and "probable fibromyalgia." Tr. 302. The ALJ assigned Dr. Witherrite's January 2013 opinion little weight. Tr. 24. Dr. Witherrite's opinions were contradicted by other medical sources, including examining physician Derek Leinenbach, Tr. 407-11, therefore, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Witherrite's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ concluded that "no basis was given for the described limitations," and "Dr. Witherrite provided no findings to support the restriction to sedentary work." The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Here, Dr. Witherrite listed three diagnoses: bilateral impingement shoulder syndrome, hip and knee osteoarthritis, and "probable fibromyalgia." Tr. 302. When asked to provide any laboratory, imaging, range of motion and other diagnostic test results, he listed "none." Tr. 302. This was a specific and legitimate reason to reject this opinion.

Second, the ALJ concluded that "[t]he minimal findings on examination are insufficient to support the described restrictions." Tr. 25. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

Dr. Witherrite's first examination of Plaintiff occurred on January 9, 2013, the date Dr. Witherrite signed the physical functional evaluation paperwork Plaintiff presented. Tr. 306. Dr. Witherrite's contemporaneous treatment notes show normal physical examination findings with only a "very slight limitation of shoulder [range of motion]." Tr. 307. Dr. Witherrite stated she has "potential fibromyalgia but determining that effect on her work is difficult, may need rheumatologic workup as well." *Id*. Dr. Witherrite completed the physical evaluation without results of the pending radiographs or rheumatology consultation. *Id*. Minimal findings by Dr. Witherrite constitute a specific and legitimate reason, supported by substantial evidence, for rejecting his January 2013 opinion.

b. July 31, 2013 Treatment Note

In his July 31, 2013 treatment note, Dr. Witherrite noted that Plaintiff "is clearly unable to have gainful employment commiserate with her abilities." Tr. 321. The ALJ did not address Dr. Witherrite's July 2013 notation.

Plaintiff contends the failure to address Dr. Witherrite's July 2013 statement was error. ECF No. 15 at 10. The Court agrees. The regulations provide that a statement by a medical source that a Plaintiff is "unable to work" is not a medical opinion and is not due any special significance because the legal conclusion of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(3) ("We will

not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . "); 20 C.F.R. § 416.927(d). The legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203-04 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion.").

The ALJ erred by failing to address Dr. Witherrite's statement that Plaintiff "is unable to have gainful employment commisurate [sic] with her abilities." However, any failure to mention this evidence is harmless error since the opinion was of little value under the regulations. *See Dutkiewicz v. Comm'r of Soc. Sec*., 663 Fed.Appx. 430, 432 (6th Cir. 2016) cert. denied *Dutkiewicz v. Berryhill*, 137 S.Ct. 1365 (2017) ("But the ALJ's failure to explicitly consider Dr. Kolinski's opinion that Dutkiewicz was "unable to work" was, at most, harmless error

because the ALJ indirectly rejected the conclusion that Dutkiewicz was unable to work by reasonably explaining that the majority of medical evidence, the nature of Dutkiewicz's treatment, and the other medical opinions in the record showed that Dutkiewicz had the capacity to perform a limited range of sedentary work."). Additionally, the July 31, 2013 treatment note provided no assessment of Plaintiff's functioning for the ALJ to evaluate. Moreover, Dr. Witherrite gave opinions as to Plaintiff's functional limitations, both before and after this opinion, which the ALJ explicitly considered. Tr. 25. Finally, Dr. Witherrite did not state Plaintiff was unable to perform *any* work, but rather that she could not perform work "commiserate with her abilities," likely referring to her experience working as a fruit packer for twenty-three years. The Court concludes the ALJ reasonably explained the other relevant medical opinions and therefore, any failure to address the January 2013 note is harmless.

### c. November 12, 2014 Opinion

In November 2014, Dr. Witherrite opined Plaintiff is "probably disabled due to her chronic [degenerative joint disease] [and] fibromyalgia combination," Tr. 368, and that Plaintiff was limited to sedentary work. Tr. 406. The ALJ assigned this opinion "little weight." Tr. 25. As the opinion was contradicted by other medical sources, including examining physician Derek Leinenbach, Tr. 407-11, the

ALJ needed to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ adequately explained his reasons for discounting this opinion. First, the parties agree, the ALJ was not required to defer to Dr. Witherrite's opinion that Plaintiff was "probably disabled," since this issue is reserved to the Commissioner for ultimate determination. ECF No. 19 at 7; ECF No. 20 at 5; *see McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability.").

Next, the ALJ found that Dr. Witherrite's November 2014 opinion was inconsistent with "the minimal findings on examination." Tr. 25. A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. As noted by the ALJ, at Plaintiff's November 12, 2014 office visit, Dr. Witherrite's physical examination findings were normal, with the exception of "tenderness diffusely" in the lumbar paraspinous, shoulder deltoid, and AC joint areas. Tr. 368. While fibromyalgia patients can have relatively normal objective findings and still be disabled, relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the

consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Finally, the ALJ found that Dr. Witherrite's opinion was not supported by the treatment record, which he noted "reflects good response to medication." Tr. 25. Substantial evidence supports the ALJ's interpretation of the record. *See* Tr. 25. For example, in August 2013, Dr. Witherrite noted that he recommended she "retry some physical therapy but she declined," but she was "functionally improved on very low dose hydrocodone, only taking one on most days, some days several, but some days none." Tr. 318. In October 2013, Dr. Witherrite noted Plaintiff was taking "one [V]icodin every day or two when it is really bad and this has helped a lot." Tr. 314. In November 2014, Dr. Witherrite indicated Plaintiff was "only taking hydrocodone 5 mg daily," and noted "stable and increased function." Tr. 371. Plaintiff contends Dr. Witherrite's opinion is "fully consistent with the treatment record" and his "longitudinal knowledge of her impairments," but does not point to any medical evidence in the record that supports Dr. Witherrite's sedentary finding or contrasts the ALJ's findings. ECF No. 15 at 11.

Plaintiff also contends the ALJ did not properly consider Plaintiff's explanations for failing to pursue other treatment, thus the ALJ's additional reliance upon Plaintiff's lack of "interest in other treatment modalities" was error.

ECF No. 15 at 11.  However, because the ALJ offered other specific and legitimate reasons to discredit Dr. Witherrite, any error is inconsequential to this overall disability determination and is therefore harmless.  *See Stout*, 454 F.3d at 1055.

The inconsistencies between Dr. Witherrite's opinion and his examination findings and the treatment record, were specific and legitimate reasons to assign less weight to Dr. Witherrite's November 2014 opinion.

### 2. Derek Leinenbach, M.D.

Plaintiff contends that the ALJ failed to give proper weight to Dr. Leinenbach's opinion.  ECF No. 15 at 12.  In May 2015, Dr. Leinenbach performed a consultative examination ordered by the ALJ after the first administrative hearing.  Tr. 407-11.  Dr. Leinenbach diagnosed chronic pain, favor fibromyalgia; chronic bilateral knee pain, favor degenerative joint disease; and morbid obesity and deconditioning.  Tr. 409.  He opined Plaintiff could: (1) stand/walk without interruption for two hours and stand/walk for a total of four hours in an eight-hour workday; (2) sit without limitation; (3) lift/carry 20 pounds occasionally and 10 pounds frequently; (4) occasionally climb, balance, stoop, knee, crouch and crawl; and (5) reach, handle, finger, and feel without limitations.  Tr. 409-10.

The ALJ gave "significant weight" to the opinion.  Tr. 26.  Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion

evidence, the ALJ is under no obligation to provide reasons for interpreting and incorporating medical opinions into the RFC assessment. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.

Plaintiff contends Dr. Leinenbach's functional assessment did not fully account for all of the limitations caused by Plaintiff's fibromyalgia and obesity and his assessment is not explained by his inconsistent clinical findings noting Plaintiff could only walk on heels and toes for a couple of steps and she struggled to get on and off the examination table. ECF No. 15 at 12. However, the ALJ found that Dr. Leinenbach's opinion was consistent with the treatment record (which Dr. Leinenbach reviewed and included radiographs), consistent with Plaintiff's "good response to medication," and consistent with her daily activities, which Dr. Leinenbach noted she cares for independently. Tr. 26, 407-08. The ALJ additionally noted Dr. Leinenbach's findings that Plaintiff's muscle strength was 5/5 in the upper and lower extremities. Tr. 25. Dr. Leinenbach indicated Plaintiff walked into the examination room without assistance and was able to remove and replace shoes without assistance. Tr. 408. Although Plaintiff views the medical evidence differently, it is the ALJ's function to resolve conflicts ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be

upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court concludes the ALJ properly supported his decision to reject Dr. Witherrite's opinion in favor of the examining physician's opinion.

**C. Plaintiff's Symptom Claims**

Plaintiff's contends the ALJ failed to rely upon clear and convincing reasons in discrediting her symptom claims and "failed to properly evaluate her fibromyalgia symptoms." ECF No. 15 at 13-16; ECF No. 20 at 7-10.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Tr. 24.  The undersigned concludes the ALJ provided specific, clear, and convincing reasons to support this finding.

*1. Objective Medical Evidence*

The ALJ found that Plaintiff's statements were inconsistent with the objective medical evidence. Tr. 24-25. Specifically, the ALJ noted that although Plaintiff experienced "some difficulties" performing a medium exertion job, the evidence "does not suggest she is incapable of lighter types of tasks." Tr. 24. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

In the decision, the ALJ summarized the objective evidence, including the results of radiographs in January 2013 showing mild degenerative changes of right acromioclavicular joint, negative findings on the left shoulder, and nonspecific degenerative changes of the lower cervical spine with no significant osteophytosis. Tr. 25 (citing Tr. 354-56). Upon rheumatology examination, there was a positive rheumatoid factor, without symptoms and physical findings of rheumatoid arthritis.

Tr. 25 (citing 359). There was no focal tenderness, swelling in the joints or tendon regions, effusion, heat, erythemea, deformity, or restricted range of motion. Tr. 358. In November 2014, Dr. Witherrite noted diffuse tenderness in the lumbar, shoulder, and AC joint areas, but noted Plaintiff exhibited normal range of motion of the shoulders and neck. Tr. 25 (citing Tr. 368). On examination after Plaintiff's initial hearing, Plaintiff's range of motion was also within normal limits. Tr. 408-09. She tested positive at 16/18 tender points without distraction and 12/18 with distraction, but had no joint instability, paravertebral muscle spasms, tenderness, effusions, deformities, or trigger points. Tr. 25 (citing Tr. 409). Muscle strength was 5/5 in the upper and lower extremities.

These objective findings, considered in conjunction with the other valid reasons cited by the ALJ, provided clear and convincing reasons to discredit Plaintiff's symptom claims.

### 2. Inconsistent Activities

The ALJ found Plaintiff's symptom claims inconsistent with her reported activities. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is

able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ noted that in May 2013, after her pain had reportedly improved "significantly," Plaintiff reported trying to open a Labor and Industries claim to be considered for retraining for a different job. Tr. 25; Tr. 329; *see Bray*, 554 F.3d at 1227 (9th Cir. 2009) (seeking out other employment supports the inference that impairment is not disabling). The ALJ also noted that Plaintiff had reported that "a typical day" involved caring for her grandchildren and working in her garden. Tr. 26 (citing Tr. 311). Finally, Plaintiff was capable of performing limited household tasks, shopping, and cooking. Tr. 23, 26.

The ALJ did not identify how Plaintiff's activities contradicted her testimony regarding her alleged symptoms and did not make any specific findings that these activities are transferable to a work setting. Tr. 26. Therefore, the ALJ's reliance on Plaintiff's activities in rejecting her reported severity of symptoms fails to meet the specific, clear and convincing standard. *See Garrison*, 759 F.3d at

1016 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [his] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [his] credibility.' ")). However, because the ALJ provided other clear and convincing reasons supported by substantial evidence for finding Plaintiff's symptom testimony less than fully credible, the error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### 3. Reason for Stopping Work and Conservative Treatment

The ALJ also discredited Plaintiff's symptom claims because Plaintiff had stopped work due to a positive urinalysis screening for marijuana, as opposed to her alleged symptoms. Tr. 24. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Plaintiff testified she has consistently treated her pain with marijuana and she disagreed with her employer's policy shift in refusing to allow her marijuana use, despite having possessed a medical marijuana card. Tr. 41-42. Though Plaintiff's pain and marijuana use are related, Plaintiff's contention she "was

unable to work without using medical marijuana" is not supported by the medical evidence. ECF No. 15 at 13. Plaintiff did not cease working due to pain; she ceased working because the method she chose to treat her pain was not tolerated by her employer. This narrow distinction in this instance becomes a more convincing reason when considered in conjunction with the ALJ's findings that Plaintiff eschewed more aggressive treatment and medication in favor of a more conservative regiment of medical marijuana.

The medical treatment a Plaintiff seeks to relieve her symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ found that Plaintiff had declined referral to a pain clinic and other medication alternatives; she declined further physical therapy, and responded to a very low dose hydrocodone. Tr. 25. Plaintiff does not dispute the evidence, instead contending the ALJ erred by failing to consider why Plaintiff did not receive additional treatment. ECF No. 15 at 15. Specifically, Plaintiff faults the ALJ for failing to consider the statement by consulting rheumatologist Daniel Sager, M.D. advising that Plaintiff is "suspicious of FDA approved drugs," Tr. 357, and exhibits "resistance and reluctance to consider" other treatment options for fibromyalgia, Tr. 359. Defendant contends the error constitutes harmless error because other valid reasons were provided to discredit Plaintiff's symptom claims. ECF No. 19 at 6. The Court agrees. This is, at most, harmless error, not only because other valid grounds were provided, but because it supports that Plaintiff's resistance to treatment was a personal choice. *See Molina*, 674 F.3d at 114. Plaintiff cites no authority for the proposition that a general fear or distrust of a recommended treatment is a "good reason" for refusing it. Likewise, the ALJ's failure to consider Dr. Sager's comment that severe financial restrictions made it hard for Plaintiff to afford "to attend physical therapy outside of the medical system," Tr. 357-58, is harmless error, where other forms of treatment within the medical system were presented but declined by Plaintiff. *See* Tr. 321 (July 2013:

"does not want medication"); Tr. 325 (July 2013: declined referral to comprehensive pain clinic and other medications).

The Court concludes the Plaintiff's reason for stopping work in combination with Plaintiff's conservative treatment plan and refusal to engage in other treatment forms provide a specific, clear and convincing reason to discredit Plaintiff's symptom claims.

### 4. Inconsistent Statements about Drug Use

The ALJ found that Plaintiff made inconsistent statements in her testimony and to her treatment provider regarding her marijuana use. Tr. 24-25. In evaluating symptom claims, the ALJ may utilize ordinary techniques of evaluation of the evidence, including prior inconsistent statements. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Moreover, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959. The ALJ's conclusion is supported by the record. Here, Plaintiff testified in April 2015 that she had been prescribed medical marijuana and her usage pertained to her pain. Tr. 41-42. She stated that she continues to use marijuana in the evening to help her sleep. Tr. 42. However, during a consultative examination in May 2015, she testified that she smokes marijuana "all day every day." Tr. 407. Her inconsistent reports on use of marijuana provide another clear and convincing reason for discrediting Plaintiff's

symptom claims, particularly given the claimed limited ability to afford other treatment, her refusal to employ other treatment modalities, the reason she stopped working, and evidence that her request for a medical marijuana card had been denied by Dr. Witherrite, Tr. 340.

In sum, the ALJ provided clear and convincing reasons for discrediting Plaintiff's symptom claims. The Court need not analyze any additional reasons proffered by the ALJ as any error would be harmless given the legally sufficient reasons cited by the ALJ. Plaintiff is not entitled to remand on this ground.

### D. Lay Evidence

Plaintiff challenges the ALJ's treatment of statements provided by Ashlee Williams, Plaintiff's daughter. ECF No. 15 at 16-17; ECF No. 20 at 10.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are

germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

The ALJ summarized the Third Party Function Report, Tr. 244-51, of Ms. Williams describing Plaintiff's daily activities and alleged limitations. Tr. 26. Ms. Williams described Plaintiff as limited in her ability to lift, bend, stand, reach, walk, kneel, climb stairs, complete task and use her hands; able lift ten pounds; and able to walk a block before needing to stop and rest for almost thirty minutes. Tr. 249. She indicated that Vicodin made her irritable. Tr. 251. The ALJ found Ms. Williams' observations regarding Plaintiff's daily activities "generally credible" and those regarding symptoms and limitations "not fully credible." Tr. 26.

The ALJ's cited inconsistencies in Plaintiff's daily activities and with the treatment record as the basis for discounting the lay evidence. Tr. 26. Plaintiff contends this is not a germane reason to reject Ms. Williams' observations, yet disregards the ALJ's specific findings. ECF No. 15 at 17. The ALJ's full discussion of these reasons is as follows:

> There is no evidence of difficulties using the hands. While the claimant has some exertional and postural limitations, she is able to care for her grandson as well as do household tasks. Dr. Leinenbach found her capable of lifting 20 pounds occasionally and standing/walking [two] hours at a time. The record contains no evidence of medication side effects.

*Id.* These inconsistencies are germane reasons to reject Ms. Williams' statements. *See, e.g.*, *Bayliss*, 427 F.3d at 1218 (ALJ properly accepted lay testimony

consistent with claimant's activities and objective evidence and "rejected portions of their testimony that did not meet this standard."); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). The ALJ did not err in partially rejecting this evidence.

### E. Steps Four and Five

Plaintiff contends that given the alleged errors in the consideration of the medical evidence, Plaintiff's symptom testimony, and the lay evidence, the ALJ also erred in assessing the RFC and at step five. ECF No. 15 at 17-18; ECF No. 20 at 10-11. Finding no earlier errors, this mere restating of this argument does not show error at steps four or five.

Lastly, Plaintiff contends the ALJ erred in failing to apply sedentary grid rule 201.12, which would have directed a finding of "disabled" at step five. ECF No. 15 at 18-19. The Court disagrees.

The ALJ found that Plaintiff retains the capacity to perform less than the full range of work at the light exertion level determining Plaintiff has the ability to stand and walk for "about 4 of 8 hours" and sit without limitation. Tr. 23; *see* 20 C.F.R. § 1567(b); 20 C.F.R. § 416.967(b) (defining light work as requiring a "good deal of walking or standing");*see also* SSR 83-10, 1983 WL 31251, at *5-6 (explaining "light work" has a six-hour cap for standing and walking while

"sedentary work" has a two-hour cap).  As applied to Plaintiff, the grids'

"sedentary work" and "light work" tables lead to opposite conclusions of

"disabled" and "not disabled."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.12

(sedentary work, disabled); 202.13 (light work, not disabled).  If a claimant's

exertional level falls between two grid rules that direct opposite conclusions, then

Social Security Ruling 83–12(2) indicates an exertional capacity that is "slightly

reduced in terms of regulatory definition," "*could* indicate a sufficient remaining

occupational base to satisfy the minimal requirements for a finding of 'Not

disabled.' "  SSR 83-12, 1983 WL 31253, *2 (1983) (emphasis added).  On the

other hand, if the claimant has an exertional capacity that is "significantly

reduced," it "*could* indicate little more than the occupational base for the lower

rule and could justify a finding of 'Disabled.' "  *Id*.  Further, SSR 83–12 directs the

ALJ to consult the VE when "the individual's exertional limitations are somewhere

in the middle" because of the "more difficult judgments" involved as to the

sufficiency of the remaining occupational base.  *Id*. at *3 (internal quotation marks

omitted).

Without citation to any authority, Plaintiff contends the stand/walk capacity

of four hours represents a "significantly reduced exertional capacity" under SSR

83-12.  However, with the full range of "light" work typically involving standing

or walking for up to six hours and sedentary work requiring a certain amount up to

two hours, it is not readily apparent that the four-hour limitation would "slightly" or "significantly" reduce her capacity for light work. The ALJ carefully explored this issue and acted properly in seeking the assistance of a vocational expert. *See* Tr. 62-65, 66 ("we have vocational experts [] to talk to us about these gray areas, about people who don't exactly fit a Grid Rule favorable and fit a Grid Rule unfavorable."). The SSR does not mandate an outcome in this circumstance. *See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) ("Where the grids do not completely describe the claimant's abilities and limitations ... the grids are inapplicable and the ALJ must take the testimony of a VE."). Moreover, the vocational expert's testimony in response to the ALJ's hypothetical reflecting the RFC's limitations indicated that, while the occupational base would be eroded "about 50 percent," Tr. 63, there remained a significant number of light level jobs. Therefore, the ALJ elicited sufficient information to determine that Plaintiff's limitations do not significantly erode the number of jobs identified by the vocational expert at step five.

The ALJ's step four and step five findings are supported by substantial evidence.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error. **IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE THE FILE.**

DATED August 15, 2018.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE